UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOAN R. PEZZANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:17CV00988SPM |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT UNITED STATES OF AMERICA'S TRIAL BRIEF

COMES NOW Defendant, United States of America, and in compliance with this Court's Order dated, October 11, 2018, [Doc. 29] and submits this trial brief to the Court and opposing counsel.

## STATEMENT OF FACTS

This action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671-2680, arises from personal injuries sustained by Plaintiff Joan Pezzani, ("Plaintiff") on July 24, 2015, at the United States Air Force Academy Equestrian Center ("Horse Stables"), Colorado Springs, Colorado. Plaintiff's injury to her right knee occurred when she unsuccessfully attempted to mount a trail horse on her first and only attempt, and she had subsequent surgery for an anterior cruciate ligament ("ACL") reconstruction. As such, the substantive law of Colorado applies to Plaintiff's negligence claim as "the law of the place where the act or omission occurred." 28 U.S.C.§1346(b). Venue is proper as Plaintiff resides in this District. 28 U.S.C. §1402(b). The United States Air Force ("USAF") is a component of the Department of Defense, an agency of the federal government, and the United States of America is a properly named Defendant.  Plaintiff seeks more than $300,000 in damages and Defendant denies liability under Colorado Revised

Statutes ("C.R.S.") §13-21-119.

Plaintiff resides in Hillsboro, Missouri. In July of 2015, Plaintiff and her family, consisting of her husband Martin Pezzani, and their two (2) minor daughters, approximately 13 and 11 years old at the time, traveled to Colorado Springs, CO for vacation to visit Plaintiff's sister, retired Army Colonel Diana Heinz, and her sister's family. On the morning of July 24, 2015, Plaintiff was a patron at the Horse Stables along with eight (8) other people, three (3) adults and five (5) minor children, consisting of both immediate and extended family members. The group of nine (9) ("Group") were: Plaintiff, her husband, and their two minor daughters, Plaintiff's sister and her husband Tony Heinz, and their two (2) minor sons, also approximately 13 and 11 years old at the time, and another minor cousin of the family.

The Group was the first group signed up to ride that day. Tony Heinz purposely arrived early and alone and before other members of the Group so they could do the unguided ride that is offered by the Horse Stables for the first ride of the day on a "first come, first served" basis. An unguided ride has no wrangler/escort/employee along on the ride to provide direction or assistance of any kind, if needed. The other eight members of the Group arrived shortly thereafter in a single separate vehicle. There will be evidence in this case that the Horse Stable inquired of Tony Heinz, generally, into the make-up the Group and levels of experience during the check-in/sign-in process. There will be evidence that Tony Heinz actually observed the Horse Stable employees asking others about riding experience.

**ARGUMENT**

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1346(b) and 2671 *et seq.* These sections are the proper jurisdictional basis for actions brought pursuant to

the Federal Tort Claims Act ("FTCA")[1]. Venue is proper pursuant to 28 U.S.C. §1402(b) as Plaintiff resides in Hillsboro, MO, which is located within this District.

The FTCA waives the sovereign immunity of the United States and renders it liable in tort "in the same manner to the same extent as a private individual under like circumstances, [except] for interest prior to judgment or for punitive damages." 28 U.S.C. §2674. The law of Colorado, as "the law of the place where the act or omission occurred," provides the substantive law applicable to Plaintiffs' negligence claim. 28 U.S.C. §1346(b).

Colorado has enacted the Equine Statute, C.R.S. §13-21-119, which grants an exemption to civil liability, with some exceptions, for those who provide horses for equine activities. Subsection 3 of the code section states, "Except as provided in subsection (4) of this section, an equine activity sponsor, an equine professional… or any other person…shall not be liable for an injury to or death of a participant resulting from the inherent risks of equine activities…" "Equine activity" includes "Riding, inspecting, or evaluating an equine belonging to another, whether or not the owner has received some monetary consideration or other thing of value for use of the equine…". Subsection (c)(IV). Subsection (f) defines "inherent risk" as "those dangers or conditions which are an integral part of equine activities…". It then lists several risks but states that inherent risks are "not limited" to the risks enumerated. Two (2) of the express inherent risks applicable are: 1) certain hazards such as surface and subsurface conditions, and 2) the potential of the participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his or her ability."

---

[1] The employees of the United States Air Force Academy were acting in the scope of their federal employment at the time Plaintiff was injured. Plaintiff properly pursued this action pursuant to the FTCA and prior to bringing this cause of action, timely filed and exhausted all administrative remedies required pursuant to 28 U.S.C.§§2401(b), 2671 - 2675(a).

Subsection 2(f)(III) and (V). Plaintiff may argue that since they mounted on asphalt instead of dirt or grass, the impact when she came down may have been a contributing factor of her injuries. However, Plaintiff acted in a negligent manner as she was not acting within her ability. Plaintiff has no fear of horses and feels comfortable around them, as she has ridden approximately eight times, even bareback as a teenager.

     Plaintiff alleges she felt she could not mount the horse at the Horse Stable with the stirrups at the length they were. However, Plaintiff attempted to mount the horse anyway when she, for some unknown reason, was undisputedly in a hurry to get on her horse in an attempt to supervise one of her daughters. The youngest daughter, who had a heart condition, was tied off to her father's horse with a "lead rope". Along with employees in the area, the other two adults familiar with the Horse Stable and its operation, were more than capable of monitoring and supervising the Group before heading out on the ride. Contrary to other evidence, Plaintiff alleges her daughter took off at a fast pace to catch up with the others heading out on the ride which triggered her hasty attempt to mount. The evidence will show that while the horses may have been moving and milling around, no one actually started heading out on the ride until it was determined that Plaintiff was not going. The evidence will demonstrate that after she failed to get on the horse, Plaintiff had a conversation with her sister and Plaintiff told her sister that she was not going and did not tell her sister she was hurt. Plaintiff's sister and brother-in-law both have military nursing backgrounds. There is no evidence that Plaintiff's husband knew she was hurt when the Group left for the ride.

     There is no evidence in this case that anyone was in any danger before, during, or after the trail ride. In her haste, she placed the left hand on the horn of the saddle but placed her right hand on the side of the saddle instead of the top of the saddle, placed her left foot in the stirrup, and failed to get the proper pull and/or enough spring from the right foot, or both, to get high enough

to kick her right leg over and get saddled. Setting the stirrup length aside, Plaintiff's sister will testify she actually watched Plaintiff attempt to mount because Plaintiff's sister believed it would be physically challenging for Plaintiff.

When the Group took off on the ride, the Horse Stable employee that was with Plaintiff when she was attempting to mount remained with her to make sure she was okay, then walked Plaintiff to a mounting platform nearby where she could sit and rest. After another Horse Stable employee finished getting through some of his patrons in the next group, he walked over to see if Plaintiff was okay and she said she was. This employee actually offered Plaintiff the air-conditioned breakroom for her to wait inside but she declined and said she would wait on the mounting platform for her family to return.  This was approximately an hour to an hour and fifteen minutes, the length of the trail ride.  Once the family returned and first learned that Plaintiff was injured, they retrieved their vehicle and drove up to the mounting platform where Plaintiff was and transported her off the grounds.

Subsection 4(b) contains five (5) exceptions to the exemption from civil liability. However, Plaintiff will pursue her claim under only one.   There is no evidence that the tack was faulty on Plaintiff's horse that would contribute to her injury. 4(b)(I)(A). There is no evidence that a dangerous latent condition existed that was known to the Horse Stable and contributed to Plaintiff's injuries.   4(b)(II). There is no evidence that the Horse Stable's acts and/or omissions constituted willful or wanton disregard for the safety of Plaintiff which caused the injury. 4(b)(III).   There is no evidence that the Horse Stables intentionally injured Plaintiff. 4(b)(IV). Plaintiff's case rides on the theory that the Horse Stables "provided the animal and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity… and determine the ability of the participant to safely mange the particular animal

based on the participant's representations of his ability."   4(b)(I)(B).    There is no evidence that Plaintiff could not have safely managed the horse that was brought to her.    Therefore, Plaintiff's entire case rests on proving that the Horse Stable failed to make reasonable and prudent efforts to determine the ability of Plaintiff to engage safely in the unguided trail ride.   Without knowledge of what a proper length of stirrup is, Plaintiff's entire case is based on her allegation that she believed the stirrups were too high for her to mount but attempted to get on the horse anyway. When Plaintiff came back down she injured her right knee.

There are few cases reported involving the Colorado statute or any other states regarding injuries while participating in equine activities. Virtually all of them involve a person being thrown or falling from a horse while riding or due to faulty tack. Those scenarios do not apply here. Mounting a horse to ride is clearly participating in an equine activity. Although not specified in the statute, the risks of mounting and dismounting a horse while participating in a trail ride are certainly an "integral part of equine activity…". Accordingly, a saddle and stirrups are an integral part of mounting a horse unless riding bareback.

To make a submissible case against Defendant, Plaintiff must first prove that there was, in fact, a duty of care.   The threshold issue to be answered by the "inherent risk" question is one of duty, not breach. That is, if one's injuries are caused by an inherent risk of equine activity, as in this case by participating in a horseback trail ride, the duty is defined by the qualified immunity of C.R.S. § 13-21-119, rather than the common law. "Whether the Defendants owed a duty to Plaintiff is a question of law for this Court, as is the scope of that duty." *Dufficy & Sons, Inc. v. BRW, Inc.*, 74 P.3d 380, 383 (Colo. App. 2003); *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo. 1987).

The first question is whether there is a duty.   In order for this Court to determine what duty the Defendant owed Plaintiff, it is necessary to *first* address the issue of whether Plaintiff's

accident resulted from an inherent risk of equine activities. If so, C.R.S. § 13-21-119, *not* the common law, defines the duty. *Fielder v. Academy Riding Stables*, 49 P.3d 349, 350 (Colo. App. 2002) ("The immunity statute is inconsistent with the former duties of an equine professional under the common law.") Additionally, if C.R.S. § 13-21-119 applies, the common law duty cases are inapplicable.

The first question is whether there is a duty. To answer that question, the Court must determine if the injury was caused from the result of an inherent risk of the equine activity in question. While usually a question for the finder of fact, the inherent risk determination may be made by the Court if the Court concludes reasonable minds cannot differ that the cause was an inherent risk. The only issue with respect to the lowering of Plaintiff's stirrup in order for her to mount the horse, or lack therefore, is whether stirrup length is an inherent risk of horseback riding. This Court should conclude it is.

The length of stirrups is done using a human's "best judgment," and such adjustments are "subject to human error." *Kovnat v. Xanterra Parks and Resorts,* 770 F.3d 949, 953 (10th Cir. 2014) (referencing the district court's analysis) As further analyzed, stirrups are an integral part of any horseback ride unless the rider is riding bareback. Every time a person decides to go horseback riding, it is a human using his or her "best judgment" and own "visual" inspection to ensure the stirrups are properly adjusted. *Id.* Stirrups are adjusted without scientific precision and there is always the possibility a wrangler will place the stirrups too high or too low. It is a judgment call of the Horse Stable employee. It is this imprecision that makes the length of stirrups an inherent risk of equine activity. Consequently, the possibility of a stirrup length that is too high or too low is characteristic in horseback riding and therefore "inherent in" horseback riding.

If for some reason this Court finds that stirrups being set too high is not an inherent risk of

equine activity, then it should apply the common law duty. At common law, one who rents horses to riders owes a duty of reasonable care. *Shandy v. Sombrero Ranches, Inc.* 525 P.2d 487 (Colo. Ct. App. 1974). As such, a negligence claim has four elements: a duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a proximate cause relationship between the breach and the injury. *Casebolt v. Cowan,* 829 P.2d 352, 356 (Colo.1992). Thus, "[a] cause of action in tort arises out of a violation of a legal duty imposed upon an actor to avoid causing harm to others." *United Blood Servs. v. Quintana,* 827 P.2d 509, 519 (Colo.1992). A legal duty is defined in terms of a standard of care. *Id.* "The source of the duty and the corresponding standard essential to the proper discharge of the duty may originate from a judicial decision or a legislative enactment." *Id.*

Colorado cases espouse the general principle that a legal duty to use reasonable care arises in response to a foreseeable and unreasonable risk of harm to others. *Id.* In Colorado personal injury cases, negligence is defined as a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself or others from bodily injury. *Lombard v. Colo. Outdoor Educ. Ctr.,* 266 P.3d 412, 415 (Colo.App.2011). Thus, "in ordinary negligence cases, an actor is required to conform his or her conduct to a standard of objective behavior measured by what a reasonable person of ordinary prudence would or would not do under the same or similar circumstances." *Quintana,* 827 P.2d at 519.

Under the "reasonable person standard," "the greater the risk, the greater the amount of care required to avoid injury to others." *Imperial Distrib. Servs., Inc. v. Forrest,* 741 P.2d 1251, 1254 (Colo.1987). Hence, what constitutes reasonable care varies according to the degree of risk associated with the activity in question. *Id.* An increased risk is therefore necessarily a prerequisite

to imposing a higher degree of care on the defendant. *Bayer v. Crested Butte Mountain Resort, Inc.,* 960 P.2d 70, 73 (Colo.1998) (the amount of care demanded by the standard of reasonable conduct must be in proportion to the risk); *Imperial Distrib. Servs., Inc.,* 741 P.2d at 1254.

In this case, Plaintiff was the last one in the Group to attempt to mount her horse as the remaining eight were already mounted and ready to leave. Plaintiff alleges she believed that the stirrups were set too high for her to mount the horse. Plaintiff's equine expert will admit that there is no standard stirrup length for mounting a horse. Plaintiff will admit that she does not know what a proper stirrup length should be when mounting a horse. Plaintiff alleges she requested the stirrups be set lower so she could mount and alleges the Horse Stable employee said she had long enough legs to mount with them set as is. The Horse Stable employees will deny this scenario could even happen because, as part of their daily routine, they adjust saddles and stirrups and other horse tack regularly, when requested by riders, without reservation. Evidence will show that adjusting stirrups is a very simple task.

While Defendant argues it is immune from liability under C.R.S. §13-21-119, and further argues if the Court denies that the length of stirrup was an inherent risk with Plaintiff making a submissible case under one of the statute's exceptions, Plaintiff still fails to meet the *prima facie* case of negligence. Defendant submits the issue of Colorado's comparative fault law for completeness.

Under Colorado law, C.R.S . §13-21-111(3), "…the court shall reduce the amount of the verdict in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made; but, if the said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court shall enter a judgment for the defendant." While Defendant denies any negligence and does not believe

Plaintiff can establish the requisite causal connection, Defendant argues that a verdict in this case must be for Defendant as Plaintiff cannot establish that Defendant's percentage of negligence is 51%.

Under Colorado law, C.R.S . §13-21-111(7), "…a person assumes the risk of injury or damage if he voluntarily exposes himself to injury or damage with knowledge or appreciation of the danger and risk involved." "[Assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct,…The two may coexist, or either may exist without the other.  The difference is frequently one between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known them, and risks which he merely might have discovered by the exercise of ordinary care."   *Harris v. Ark*, 810 P.2d 226 (Colo. 1991).

There are no lost wages in this case.

There is no loss of consortium claim in this case.

Punitive damages are specifically precluded by the Federal Tort Claims Act, 28 U.S.C. §2674.

"There is a fallacy, which seems to be widely accepted, that for any personal injury, however caused, some person or instrumentality should be liable in damages.   Such is not and has never been the law."   Lavine v. General Mills, Inc., 519 F.Supp. 332, 337 (N.D.Ga. 1981).

WHEREFORE Defendant is immune from liability under Colorado law due to the inherent risk of injury while mounting a horse. If it is determined there is no inherent risk associated with stirrup length while mounting a horse in this case, Plaintiff still fails to make her *prima facie* case of negligence.   Furthermore, if the Court finds negligence in this case, Plaintiff's negligence is equal to or greater than Defendant's negligence and verdict should be in favor of Defendant.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*s/ Nicholas P. Llewellyn*
NICHOLAS P. LLEWELLYN    #52836
Chief, Civil Division
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-7637
(314) 539-2777 FAX
Email:   nicholas.llewellyn@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2018, the foregoing *Trial Brief* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

James E. Parrot
parrotlaw@sbcglobal.net

*s/     Nicholas P. Llewellyn*
NICHOLAS P. LLEWELLYN
